## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**OBED MERCADO-MARI**,

    Plaintiff,

    v.                                                                    Civil No. 14-1292 (BJM)

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

## OPINION AND ORDER

Obed Mercado-Mari ("Mercado") seeks review of the Commissioner's decision finding that he is not entitled to disability benefits under the Social Security Act ("Act"), 42 U.S.C § 423, as amended,  (Docket No. 1), and filed a memorandum of law in support of his position.  (Docket No. 16).  Mercado asks for judgment to be reversed and an order awarding disability benefits, or in the alternative to remand the case to the Commissioner for further proceedings.   The Commissioner answered the complaint (Docket No. 10) and filed a memorandum.  (Docket No. 19).  This case is before me on consent of the parties.  (Docket Nos. 6-5).  After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996).   The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).   In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled.   20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982).   In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity."   If so, the claimant is not disabled.   20 C.F.R. § 404.1520(b).   At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments.   20 C.F.R. § 404.1520(c).   If not, the disability claim is denied.   At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity.   20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.   If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled.   If not, the evaluation proceeds to the fourth step, through

which the Administrative Law Judge ("ALJ") assesses the claimant's residual functional capacity[1] ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past.   If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e).  If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as age, education, and work experience.  If the claimant cannot, then he is entitled to disability benefits.  20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that he cannot return to his former employment because of the alleged disability.  *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).  Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured.  *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Mercado was born on August 31, 1970.  Tr. 249.  He has a second grade education, can neither read nor write in English, and is right-handed.  Tr. 83, 274.  He worked as a maintenance worker (janitor) from January 1994 to June 2009.  Tr. 59-63 (Mercado's work history report).  He claims to have become unable to work since June 1, 2009 (alleged onset date), at 38 years of age, due to a right elbow fracture, left leg pain, and edema on both legs.  Tr. 270-273.  Mercado applied for a period of disability and disability insurance benefits on June 24, 2010, and last met the Social

---

[1] An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

Security Administration's ("SSA") insurance status requirements on March 31, 2014 (date last insured).  Tr. 249, 270.

Mercado was treated for his physical conditions at the San German Medical Society from January 12, 2006 through September  9, 2012, Tr. 87-92, 129, 141-149; at the Center for Physical Rehabilitation ("Center") from August 3 to 27, 2009, Tr. 79-86; at the emergency room of the San German Metropolitan Hospital ("ER") on May 14 and 16, 2010, June 25 and 26, 2011, and August 1, 2011 Tr. 98-100, 132-136; at the San German Metropolitan Hospital outpatient surgery unit from August 10 to November 12, 2012, Tr. 152-159; by Dr. Harvey Lebron ("Dr. Lebron"), Mercado's primary physician, from January 12, 2006 through October 3, 2012, Tr. 90-91, 109, 129, 138, 141-142, 145-149; and by Dr. Ramón Davila ("Dr. Davila"), an orthopedic surgeon, from July 29, 2009 through November 26, 2012, Tr. 104, 107-109, 151, 157, 159-161, 168, 172-174.

On January 12, 2006, Dr. Lebron ordered lab tests and treated Mercado with medication for left leg pain from edema.  Tr. 91.  On June 18, 2008, Mercado returned to Dr. Lebron who diagnosed edema in both of his legs.  Tr. 90.  On July 10, Dr. Lebron treated Mercado with medication (Naproxen 500mg) for left leg pain.  Tr. 89.  On June 12, 2009, Mercado suffered a fall at his home.[2]  Tr. 88.  Dr. Rafael Grovas Porrata ("Dr. Grovas"), a radiologist, performed an x-ray consultation of Mercado's right elbow and forearm, and suspected that there was a radial head fracture versus confluent shadows, and a questionable elevation of the anterior fat pad versus confluent shadows, but noted that a proper assessment could not be done.  Tr. 325.  Dr. Grovas further noted no dislocation, narrowing in the elbow joint, and prominence of the soft tissues in the elbow, but noted that the prominence could be related to edema versus Mercado's body habitus. *Id.*  Dr. Grovas recommended orthopedic evaluation as well as a follow-up elbow series with better positioning on the lateral projection and an oblique view.  *Id.*

---

[2] The record has conflicting dates for the fall.  *Compare* Tr. 88 ("After a fall on June 12th . . ."), *with* Tr. 94 ("On June 10, 2009, Mr. Mercado fell . . .), *and* Tr. 83 ("Patient states that on 6/12/09, he fell . . .")

On July 23, 2009, Dr. Lebron diagnosed Mercado with right elbow trauma and referred him to Dr. Davila.  Tr. 88, 109.  Diagnostic test results showed that Mercado had a decreased range of motion.  Tr. 109.  Dr. Davila issued a treatment plan at the Center of Physical Rehabilitation ("Center") on July 29.  Tr. 109.  Center conducted an initial evaluation on August 3, and reported that Mercado suffered continuous intense pain (3 out of 5 intensity) afflicting the right elbow.  Tr. 83.  Center also reported moderate swelling and/or inflammation in his elbow as well as moderate severe (3 out of 5 intensity) muscle spasms, a presence of contracture, but normal muscle tone and no atrophy. Center found Mercado independent for functional activities, ambulation without difficulty, and a normal pattern of ambulation.  *Id.*  Center's evaluation showed that Mercado had good balance while sitting, standing, and walking, as well as a tolerance for each for a duration of 11-30 minutes.  Tr. 84.  Center remarked that Mercado had a flexion of 150 degrees, an extension of 120 degrees, normal supination/pronation, poor muscle strength (2 out of 5), and good elbow flexion/extension.   *Id.*   Center commenced a treatment plan with the goals of reducing inflammation and muscle spasms, increasing muscle strength, and reducing pain, consisting of applying hot compresses, therapeutic ultrasound, electric stimulation, massages, isometrics, and stretching.  Tr. 85.

On August 27, 2009, Center conducted a re-evaluation where Mercado reported continued strong pain in his right elbow after receiving therapy, as well as feeling cramps in his right arm and difficulty gripping objects with his right hand.  Tr. 79.  Center reported presence of continuous and intense (4 out of 5 intensity) pain in Mercado's right elbow.  *Id.*  Center also reported moderate inflammation in Mercado's epicondyle, lateral, of the right elbow and mild-moderate muscle spasms (2 out of 5 intensity) in his right bicep.  *Id.*  Center's re-evaluation showed an absence of contracture, normal muscle tone, an absence of atrophy in the leg, elbow, and bicep area, and that Mercado was independent as to functional activities, being able to ambulate without difficulty.  *Id.* The re-evaluation also showed that Mercado's balance while sitting, standing, and walking was good with a tolerance of 11-30 minutes in each.  Tr. 80.  Center reported that Mercado showed an abnormal range of motion of his right elbow with 105 degrees flexion and 75 degrees extension,

as well as poor muscle strength in the right elbow (2 out of 5) in flexion and extension.  *Id.*  Center recommended that Mercado apply cold compress and avoid excessive exertion with the right arm, and referred him for medical re-evaluation.  *Id.*

Mercado filed a claim for disability benefits on October 9, 2009.  Tr. 323.  On January 4, 2010, Dr. Cesar Cintron ("Dr. Cintron"), an orthopedic surgeon and consultative examiner from the Disability Determination Services ("DDS"), evaluated Mercado.  Tr. 94.  Cintron noted that Mercado had a normal gait, was not distressed, and had normal movements with no muscle spasms, deformities, or areas of pain in the cervical region.  Tr. 95.  Dr. Cintron reported a well-healed surgical scar in the radial aspect of the forearm and no atrophy of the arm, forearm, or thenar or hypothenar areas.  *Id.*  Dr. Cintron also reported no rheumatology or post-traumatic deformities of the upper extremities, negative Adson's and Tinel's tests, a reduced range of movement on the right elbow, but normal ranges of movement as to the rest of the joint.  *Id.*  Mercado could make pinching movements with his hands at full strength (5 out of 5), oppose his thumbs, and make a fist at full strength (5 out of 5).  *Id.*  Dr. Cintron reported that Mercado had complete functional ability as to his hands.  *Id.*  Dr. Cintron reviewed x-rays taken at the DDS's facilities of Mercado's right elbow and issued a final diagnosis that there was a complete consolidated fracture, without displacement of the head of radius.  Tr. 96.  Dr. Cintron opined that Mercado was not disabled for sitting, standing, walking, lifting and carrying things, handling objects, listening, speaking, or traveling. *Id.*

On March 3, 2010, Mercado moved to withdraw his application.  Tr. 323-324.  On May 14, Mercado was admitted to the emergency room at San German Metropolitan Hospital suffering from severe constant chronic fixed cramping with severe pain in the right shoulder and forearm. Tr. 100.  On May 16, he was admitted to the emergency room at San German Metropolitan Hospital for pain in the right elbow.  Tr. 98.

On May 17, 2010, Mercado visited Dr. Davila who filled out a questionnaire titled "Pain Description" ("questionnaire").  Tr. 103-104, 350.  Dr. Davila described Mercado's symptoms as sharp, rated the intensity of the pain as 8 out of 10, with radiations to the hand.  Tr. 103.  Dr. Davila

also reported that the pain had lasted seven years at that point with no relief, and that any movement of the right arm, regardless of the exertion, brought about or aggravated the pain.  *Id.*  Dr. Davila prescribed medication and physical therapy.  Tr. 104.  Dr. Davila observed Mercado's symptoms rendered him unable to use his right arm and that Mercado developed depression as a result.  *Id.*  The questionnaire also reported that Mercado would be unable to lift or carry any weight, climb, or reach above shoulder level.  Tr. 105.  Additionally, Dr. Davila reported that Mercado was unable to use his right hand for simple grasping, pushing and pulling, or fine manipulating, and would be totally limited from driving automotive equipment.  *Id.*  On June 24, 2010, Mercado filed a second application for social security benefits.  Tr. 249.  On July, 7, he completed a disability report wherein he stated that his ability to work was limited by a right elbow fracture, left leg pain, and edema in both legs.  Tr. 273.  He stated he stopped working due to those conditions.  *Id.*

On April 2, 2011, Mercado was evaluated by the DDS's consultative examiner, Dr. Michael Babilonia ("Dr. Babilonia"), an internist rheumatologist.  Tr. 111.  Dr. Babilonia noted Mercado's main complaints were episodes of joint pain and low back pain.  *Id.*  He also noted that Mercado suffered a fracture of his right forearm approximately ten years ago, requiring orthopedic surgery, suffered a fracture of his right elbow, and that Mercado mentioned having lost movement in the right elbow joint secondary to the fracture.  *Id.*  Dr. Babilonia reported a restriction of angle of movement on Mercado's right shoulder, right elbow, and lumbar spine.  Tr. 112, 114.  Mercado's left shoulder, left elbow, wrists, hands, fingers, ankles, feet, toes, knees, and hips showed normal movements.  *Id.*  During the musculoskeletal evaluation, Mercado mentioned moderate to severe pain in the area of the cervical and lumbar spine, as well the right shoulder, and moderate pain in the left shoulder joint and right elbow.[3]  Tr. 113.  Dr. Babilonia reported no redness, swelling, or effusion of the joints; no muscle atrophy or loss of sensitivity in the extremities; and that the low back pain does not radiate to the lower extremities.  *Id.*  Mercado did not limp when walking, did not use a cane or crutches, and showed a normal mental status.  *Id.*  Dr. Babilonia classified

---

[3] Notably, Mercado's complaints make no reference to pain or limitations of movement in either of his hands.

Mercado's motor strength as excellent.  His gripping strength was 5 out of 5 (excellent) in his left hand and 4 out of 5 (good) in his right hand.  Tr. 114, 119.  Dr. Babilonia reported no pain, tenderness, swelling, or nodes in the joints of either hand, and no contractures, deformities, atrophies, or tremors.  Tr. 119.  Mercado was able to grip, grasp, pinch, finger trap, oppose his fingers, button a shirt, pick up a coin, and write with both hands with no limitations other than decreased grip strength in the right hand.  *Id.*  Dr. Babilonia also conducted Tinel and Phalen tests on both hands, and the results were negative.  *Id.*  He referred Mercado to Dr. Castro Ramirez ("Dr. Ramirez") for an x-ray of the right elbow, which suggested osteoarthritic changes at the humero radial and humero ulma and mild diffuse osteopenia.  Tr. 121.  Dr. Ramirez noted not seeing gross fracture or dislocation, nor any joint effusion.  *Id.*

On April 13, 2011, the DDS's consultative non-examining internist, Dr. Florentino Figueroa ("Dr. Figueroa"), conducted a case analysis of Mercado's allegations of right elbow fracture, left leg pain, and edema in both legs.  Tr. 371.  Dr. Figueroa took into consideration Dr. Davila's notes and clinical findings and Dr. Babilonia's consultative examination.  Tr. 371.  Dr. Figueroa reported, after evaluation of the medical evidence on record, that there was a medically determinable impairment ("MDI") for right elbow fracture and evidence that Mercado had limitation of movement over the right elbow and the right shoulder.  *Id.*  He also reported that Mercado's gait was normal, muscle strength of 4 out of 5 in the right side but nonetheless able to perform all functions.  *Id.*  Dr. Figueroa noted limitation of motion over the right elbow but that there was no objective evidence to establish a MDI for that condition.  *Id.*  Dr. Figueroa found that Mercado's case did not meet or equal any of the applicable listings and that it would be reasonable to think that Mercado would be able to perform consistent with the following RFC assessment: could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds; stand/walk, sit, and push/pull for about 6 hours in an 8-hour workday.  Tr. 373.  Dr. Figueroa reported postural limitations for occasionally climbing ladders, ropes, or scaffolds and crawling, but no limitation as to climbing ramps/stairs, balancing, stooping, kneeling, or crouching.  Tr. 374.  Dr. Figueroa reported no manipulative limitations, finding that Mercado could reach in all directions (including

overhead), handle (gross manipulation), finger (fine manipulation), and feel (skin receptors) unlimitedly. Tr. 375. His RFC also showed no visual, communicative, or environmental limitations. Tr. 375-376.

On April 18, 2011, Dr. Figueroa requested x-rays of Mercado's right shoulder and right elbow. Tr. 383. On May 5, Dr. Moisés Acevedo ("Dr. Acevedo"), radiologist, conducted a roentgenologic consultation and reported mild degenerative changes at the acrioclavicular joint of Mercado's right shoulder. Tr. 383. Dr. Acevedo also reported that Mercado's shoulder had normal bone density and architecture, good alignment, mild irregularity of the articular surfaces, but not bony injury or bone destruction. *Id.* As to the right elbow, Dr. Acevedo reported a deformity of the proximal head of the radios suggesting an old healed fracture, sclerosis of the articular surfaces, and spur formation diffusely most pronounced at the level of the coronoid process of the ulna. *Id.* Dr. Acevedo noted articular irregularities of the right elbow suggesting superimposed degenerative joint disease and asked for clinical correlation. *Id.* Dr. Figueroa evaluated the x-ray on May 20, 2011, and reported only mild showing of osteoarthritis with no evidence of fracture and sustained his prior RFC. Tr. 385.

On June 2, 2011, the SSA determined that Mercado was not eligible for Social Security disability benefits. Tr. 52. On June 28, Mercado requested reconsideration. Tr. 187. On June 30, Mercado completed a disability report on appeal wherein he stated that his condition had worsened since the last report. Tr. 283. Mercado claimed he felt a lot of pain in his right elbow, which he said was deformed; that he could barely move with "very strong pain" resulting from movements, such as raising or using his right hand; and that he had no strength in his right hand. *Id.* He reported that his right hand swelled and he felt cramps and pain in his fingers. *Id.* Additionally, he reported that he needed help undressing because he was unable to raise or stretch his right arm. Tr. 285.

On July 8, 2011, Mercado filed a function report. Tr. 64. He reported that his conditions affect his ability to lift, reach, climb stars, and use his hands, as well as cause stress and anxiety. Tr. 69-70. He reported that he lived alone in his house and eats things that do not require prior

preparation or cooking, and that his activities are limited to listening to the radio, watching T.V., and going to church.  Tr. 64.  He reported difficulties dressing, bathing, caring for hair, shaving, feeding himself, and using the bathroom.  Tr. 65.  He reported that he puts clothes in the washing machine once a week, explaining that he does no other house or yard work as a result of his right arm condition.  Tr. 66-67.

On July 19, 2011, Mercado answered a questionnaire of daily physical activities for the New York State Office of Temporary and Disability Assistance.[4]  Tr. 73.  He reported that he tires easily when climbing stairs or going up a slope and wakes up with shortness of breath.  *Id.*  He also reported that he cooked meals and made the bed daily while a family member helps with washing clothes, mopping, and sweeping.  Tr. 74.  He reported that his condition results in dizziness, chest pain, strong pain in the left arm and leg resulting in difficulties kneeling with no relief from medication.  Tr. 75.  He also reported cramps in his arm and a lack of strength causing him to drop things, and an inability to hold things.  Tr. 78.

On August 1, 2011, Mercado suffered a fall and was admitted into the emergency room at the San German Metropolitan Hospital for fixed constant sharp acute pain in his right hand, forearm, thigh, knee, ankle, foot, and left knee.  Tr. 132-133.  The pain's intensity was reported to be 3-4 out of 5.  That same day, Dr. Grovas issued a radiology report of the right elbow and left knee.  Tr. 130.  Dr. Grovas reported no fracture or dislocation, narrowing and spurring of the proximal radial-capitellar articulation, early spurring of the olecranon ventrally, and no joint effusion of the right elbow.  *Id.*  With regards to the left knee, he reported no fracture or dislocation, mild narrowing of the medial compartment of the knee joint, early spurring of the medial tibial plateau including of the tibial spines, mild enthesipathic changes of the patella, questionable loose body abutting the lateral tibial spine, and no significant joint effusion.  *Id.*  Tr. 133. On August 10,

---

[4] The New York State Office of Temporary and Disability Assistance: Division of Disability Determinations is responsible for obtaining information in connection with an application for or review of SSD benefits.

Mercado went to Dr. Lebron with complaints of pain in his left leg and right arm and was prescribed medication for his right elbow and left knee pain. 129.

On September 28, 2011, Dr. Grovas conducted a radiology report on Mercado's left knee and right humerus.  Tr. 150.  Dr. Grovas reported that Mercado's left knee showed no fracture or dislocation, slight narrowing of the medial compartment of the knee joint, early spurring of the medial tibial plateau, mild enthesipathic changes of the patella, calcification in the suprapatellar bursa, suggesting a loose body, and no significant soft tissue swelling, but suspected tiny joint effusion.  Tr. 150.  As to the right humerus, Dr. Grovas reported there was no fracture or dislocation, that there was mild narrowing as well as early spurring of the proximal radial capitellar articulation, and no abnormal soft tissue calcification.

On October 3, 2011 the SSA, upon reconsideration, affirmed its previous determination and explained that, though Mercado may be disabled from "performing certain types of jobs," he can perform light jobs.  Tr. 56, 188.  On October 6, Mercado went to Dr. Lebron for left knee pain and was treated with medication.  Tr. 149.  On December 14, Mercado went to Dr. Lebron for a follow up and was treated with medication for right elbow pain.  Tr. 148.  On December 19, Mercado filed a request for hearing.  Tr. 197.  On December 23, Mercado filed another disability report stating that his condition had worsened since the previous report, describing that he felt a lot of pain in his right elbow extending to his whole arm and neck with pain in his left leg, foot cramps, his knee giving out, and loss of balance.  Tr. 305.  He also reported that he could not grab anything with his right hand because it cramps up and that he has difficulty standing, sitting, or walking.  *Id.*

On February 28, 2012, Dr. Lebron treated Mercado with medication for right elbow pain and left leg pain.  Tr. 147.  On July 24, Dr. Lebron treated Mercado with medication for left knee pain.  Tr. 145.  On August 3, Mercado went to San German Medical Society where he was provisionally diagnosed with left knee pain.  Tr. 144.  On August 5, Dr. Grovas issued a radiology report of Mercado's kidneys, ureters, and bladder and reported bony structures demonstrating early spurring facets at the lower lumbar level.  Tr. 143

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                    12

On September 12, 2012, Dr. Lebron treated Mercado with medication for right elbow pain and left knee pain.  Tr. 142.  On October 3, Mercado returned for limitation of movement and was treated with medication for right shoulder pain.  Tr. 141.  That same day, Dr. Lebron reported that Mercado suffered from right shoulder, elbow and left knee pain.  Tr. 138.  Dr. Lebron reported symptoms of pain, soft tissue swelling, joint deformity, and limitation of motion affecting the wrists, hands or fingers.  *Id.*  Dr. Lebron reported that, in an 8-hour workday, Mercado would be able to grasp, turn, twist, finely manipulate, or reach (including overhead) for only 10 minutes with either arms or hands.  *Id.*

On November 13, 2012, Dr. Davila performed a right elbow radial head excision, finding severe degenerative joint disease of the radio-capital joint.  Tr. 152-156, 159.  On November 23, Dr. Adalberio Mendoza Vallejo issued a surgical pathology report of Mercado's right radial head after decalcification and microscopically diagnosed a histologic abnormality.  Tr. 158.  On November 26, Dr. Davila reported that Mercado's wound appeared to be healing well with no signs of infection, and referred Mercado to physical therapy.  Tr. 151.

On November 27, 2012, an SSA hearing was held before ALJ Emily Statum.  Tr. 29.  The ALJ and Mercado's counsel each posed one hypothetical question to the vocational expert ("VE"), Dr. Ariel Cintron.  Tr. 44-49.  The ALJ first asked the VE to consider whether an individual with Mercado's age, educational preparation, and previous work occupation, with the following limitations, could perform light work:[5] carry or lift 20 pounds occasionally and ten pounds frequently; sit six hours in an 8-hour workday, stand or walk six hours in an 8-hour workday; do unlimited pushing and pulling, but occasionally reaching overhead with a right dominant upper extremity and frequently reach with that right upper extremity, but no limitations with respect to overhead reaching or in any other direction with the remaining left upper extremity; frequently climb stairs or ramps, occasionally climb ladders, ropes or scaffolds, frequently balance, stoop,

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with someone pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

kneel, crouch, and occasionally crawl. Tr. 44-45.  The VE testified that a person with those characteristics could not perform Mercado's previous occupation, but even with limitations reaching overhead with his dominant right arm could work as a wire worker, an electronics worker, or a wire preparation machine tenderer because these are jobs that do not require lifting the arms above the head. Tr. 45-47.

Mercado's counsel then asked the VE to consider a person with the same age, education, and work experience as Mercado, who is limited to light jobs, but can only use his dominant right arm for ten minutes to make "that type of movement in a repetitive manner in a total of an eight-hour day." Tr. 48.  The VE testified that a person with those characteristics could not perform Mercado's previous occupation nor any other job that may exist in the national or regional economy. Tr. 49.

The ALJ issued a written decision on January 25, 2013, finding that Mercado was not disabled under sections 216(i) and 223(d) of the Act. Tr. 14-24.  The ALJ found that Mercado had severe physical impairments (status post right elbow fracture and right elbow osteoarthiritis) but that the impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526.  Tr. 16.  The ALJ determined that Mercado had the physical RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), lifting/carrying 20 occasionally and 10 pounds frequently, sitting six hours in an 8-hour workday, standing or walking six hours in an 8-hour workday with unlimited pushing or pulling, with the additional limitations of occasional reaching overhead with the right dominant upper extremity, frequent reaching with the right upper extremity with no limitations reaching overhead or in any other direction with the remaining upper extremity, frequently climbing stairs or ramps, occasionally climbing ladders, ropes or scaffolds, frequently balancing, stooping, kneeling, or crouching and occasionally crawling.  Tr. 18.

In making that determination, the ALJ explained the weight given to each of the treating physicians, the consultative examiners, and the consultative non-examiner.  Tr. 22.  She explained that she accorded great weight to the clinical signs and findings reported by Dr. Babilonia and Dr. Cintron since they performed comprehensive evaluations of the claimant that were supported by

objective tests and to Dr. Figueroa because his evaluation was consistent with the evidence and with the evaluations performed by Dr. Cintron and Dr. Babilonia.  *Id.*  With regards to Dr. Davila, the ALJ explained that she accorded his questionnaire little weight because "it [was] conclusory and unexplained and contain[ed] unsupported limitations of function that [were] inconsistent with the medical evidence."  *Id.*  As to Dr. Lebron, she stated that no weight was granted to his limitations report because it was "not supported by his own treatment notes and objective findings or the rest of the medical evidence."  *Id.*  The ALJ also noted Mercado's surgery but explained that the record was silent as to any objective findings as to Mercado's limitations after surgery beyond Dr. Davila's evaluation wherein he stated that the wounds appeared to be well with no signs of infections.  Tr. 24, 151.  The ALJ concluded that although Mercado was unable to perform past relevant work, considering his age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could perform.  Tr. 22-24.

Mercado requested review of the ALJ's decision on March 14, 2013, which the Appeals Council denied on February 10, 2014.  Tr. 1-3, 10.

### DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at Step Five in the sequential evaluation process that based on Mercado's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act.

Mercado initially argues that the ALJ did not deploy the correct legal standards because she made physical RFC findings that did not accurately reflect his condition and formulated a defective hypothetical question, thus not complying with the standard set out in *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982).  Mercado refers specifically to the ALJ's finding that he could "occasionally reach overhead and frequently reach with his right upper extremity in any other direction" and claims the record contains no "medical residual functional

assessment" that translated the bare medical facts into functional terms.  Docket No. 16, at 13-14;
Tr. 18.

Mercado further argues that the ALJ failed to explain the weight given to each medical
opinion under 20 C.F.R. § 404.1527(d)(2)(ii) and failed to provide "specific reasons" for the weight
given to the treating source's medical opinion under SSR 96-2.  Docket No. 16, at 15-16.  Mercado
also argues that the ALJ attempted to diminish his pains, weaknesses, and limitations by
mentioning that he takes care of his personal needs.  Docket. No. 16, at 16-17.  The Commissioner
argues that there is substantial evidence in the record to support the ALJ's findings and requests
that her decision be affirmed.

### Hypothetical Question

A VE's testimony is relevant to the claimant's disability determination insofar as the
hypothetical question posed to the VE accurately reflects the claimant's functional work capacity.
*See Arocho*, 670 F.2d at 375.  In reviewing the evidence, the ALJ should give "*more* weight to
opinions from [a claimant's] treating sources, since these are likely to be the medical professionals
most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)."  20
§ C.F.R. 404.1527(d)(2).  In addition, controlling weight must be given to a medical treating
source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with other substantial evidence in the case record.  20 C.F.R. §
404.1527(d)(2); SSR 96-2.  However, it is well within an ALJ's authority to weigh the evidence,
to determine credibility of the plaintiff's subjective complaints, and to use only credible evidence
in posing a hypothetical question to a vocational expert.  *Arocho*, 670 F.2d at 375.

"The ALJ [is] entitled to credit the vocational expert's testimony as long as there [is]
substantial evidence in the record to support the description of [the] impairments given in the . . .
hypothetical."  *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 429 (1st Cir. 1991).
In other words, a VE's testimony must be predicated on a supportable RFC assessment.  *See* 20
C.F.R. § 404.1520(g)(1).  Additionally, ALJs "must consider findings and other opinions of State
agency medical and psychological consultants and other program physicians, psychologists, and

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                    16

other medical specialists as opinion evidence," except for the ultimate determination about disability.  20 C.F.R. § 404.1527(e)(2)(1).

The portion of the hypothetical at issue is the frequency with which Mercado can reach, and reach overhead, with his right upper extremity, and handle with his dominant right hand. Mercado argues that the ALJ "unexplainably found a frequent capacity to reach with the . . . right upper extremity in any other direction, not having medical support on record for this translation of raw medical evidence into functional capacity."  Docket No. 16, at 13.  Mercado notes that significant limitations of reaching or handling (limitations stated in Dr. Davila's questionnaire and Dr. Lebron's limitations report) may eliminate a large number of occupations a person could otherwise do.

As an initial matter, the ALJ determined that Mercado had the RFC to perform light work, which required him to lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours in an 8-hour workday with unlimited pushing or pulling; occasionally reach overhead with the right dominant upper extremity, *frequently reach with the right upper extremity, and reach overhead or in any other direction with no limitations with the remaining upper extremity*; frequently climb stairs or ramps, occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, or crouch and occasionally crawl.  Tr. 18 (emphasis added).  The ALJ's RFC does not state, as Mercado asserts, that Mercado had a "frequent capacity to reach with the right upper extremity in any other direction;" instead it states that he could "frequent[ly] reach with the right upper extremity."  *Id.*  The ALJ's RFC finding is silent as to the direction in which Mercado could reach frequently.

In making her RFC finding, the ALJ granted great weight to the clinical signs and findings reported by DDS consultative examiners, Dr. Babilonia and Dr. Cintron, and DDS consultative non-examiner, Dr. Figueroa.  Tr. 22.  Conversely, the ALJ accorded little weight to the treating physician's, Dr. Davila's, questionnaire for being "conclusory and unexplained," containing "unsupported limitations of function that are inconsistent with the medical evidence" and no weight to the treating physician's, Dr. Lebron's,  limitations report for not being supported "by his

own treatment notes and objective findings or the rest of the medical evidence." *Id.* That being the case, the court assesses whether substantial evidence exists in the record to support the portion of the RFC at issue and the ALJ's decision to weigh the physicians' reports in the manner which she did.

The portion of the treating physicians' reports and findings relevant to Mercado's manipulative limitations of his arms and hands are Dr. Davila's questionnaire and Dr. Lebron's manipulative limitations report. Dr. Davila's questionnaire, completed on May 17, 2010, states that Mercado's right elbow and right shoulder pain are caused and aggravated by any movement of the right arm, rendering Mercado unable to use his right arm. Tr. 103-104. Dr. Davila also reported that Mercado could never reach above shoulder level nor grasp, push/pull, or finely manipulate with his right hand. Tr. 105.

I note that Dr. Davila's clinical signs, findings, and notes up to that point make no reference of an inability to reach above shoulder level and instead report that Mercado was independent as to his functional activities. Tr. 79. Further, the medical record up to that point only shows one instance of gripping difficulty, which was self-reported by Mercado, but no test was conducted to evaluate gripping strength. *Id.* Additionally, the treatments on record up to the completion of the questionnaire include pharmacotherapy, physical therapy, and a recommendation that Mercado avoid excessive exertion with the right arm—not all exertion—which is inconsistent with Dr. Davila's questionnaire asserting that any movement of the right arm would cause and aggravate Mercado's pain. Tr. 80-81, 85, 87-91.

Dr. Lebron's limitations report, completed on October 2, 2012, reported that Mercado suffered from pain, soft tissue swelling, joint deformity, and limitations of movement affecting the wrists, hands, and fingers. Tr. 138. Dr. Lebron reported that, as a result of his condition, Mercado would only be able to grasp, turn, twist, finely manipulate, or reach (including overhead) for only ten minutes in an 8-hour workday. *Id.* The only evidence of ailments affecting Mercado's hands is the daily physical activities questionnaire where Mercado self-reported strong pain in his left arm and an inability to hold things as a result of decreased gripping strength and cramps; and an

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                    18

emergency room admission after a fall where he was treated for pain in his right hand, forearm, thigh, knee, ankle, foot, and left knee.  Tr. 75, 78, 132-133.  I note that this pain refers only to the right hand, and not the left, an inconsistency between the medical evidence and the manipulations report.  Subsequent x-rays did not include Mercado's hands but were limited to his left knee, right elbow, and right humerus. Tr. 129,150.  Dr. Grovas's radiology report of Mercado's right elbow reported no fracture or dislocation, narrowing and spurring of the proximal radial-capitellar articulation, early spurring of the olecranon ventrally, and no joint effusion of the right elbow.  Tr. 130.  After that emergency room admission, Mercado's later visits to Dr. Lebron were for complaints about right elbow and left leg pain but no complaints of pain or limitations as to his hands for gripping, grasping, turning, twisting, or fine manipulation.

The non-treating physicians' evaluations and assessments relevant to this inquiry are Dr. Cintron and Dr. Babilonia's evaluations of Mercado, and Dr. Figueroa's RFC assessment.  Dr. Cintron's evaluation, conducted on January 4, 2010, noted Mercado's chief complaint as right elbow pain.  Tr. 94.  Dr. Cintron reported no atrophy of the arm, forearm, or thenar, or hypothenar areas in the upper extremitites.  Tr. 95.  He also reported no evidence of infection, no deficit of the median, ulnar, or radial nerve; no rheumatology or post-traumatic deformities with negative Adson's and Tinel's tests; a reduced range of motion in the right elbow of 20 degrees with normal ranges of movement in all remaining joints.  *Id.*  As to Mercado's hands, Dr. Cintron reported complete functional ability noting that Mercado could make pinching movements (pinching strength at 5 out of 5), oppose his thumbs, and make a fist at full strength (5 out of 5), concluding that Mercado was not disabled for lifting/carrying or handling objects.  Tr. 96.

Dr. Babilonia evaluated Mercado on April 2, 2011, noting among Mercado's main complaints episodes of joint pain with loss of movement in the right elbow joint.  Tr. 111.  Dr. Babilonia reported restriction of the angle of movement of Mercado's right shoulder (forward elevation, abduction, and adduction) and right elbow; but normal movements in his wrists, hand, and fingers. Tr. 112. During the evaluation, Dr. Babilonia noted that Mercado mentioned moderate to severe pain in the right shoulder and moderate pain in the right elbow.  Tr. 113.  Dr. Babilonia

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                    19

reported no redness, swelling, or effusion of the joints and no muscle atrophy or loss of sensitivity in the extremities.  *Id.*  As to Mercado's hands, Dr. Babilonia reported that he had excellent gripping strength with his left hand (5 out of 5) and good gripping strength with his right hand (4 out of 5) classifying Mercado's motor strength as excellent.  Tr. 114, 119.  Dr. Babilonia further reported that there was no pain, tenderness, swelling, or notes in the joints of either hand; and no contractures, deformities, atrophies, or tremors.  Tr. 119.  Additionally, Dr. Babilonia reported that Mercado was able to grip, grasp, pinch, finger trap, oppose his fingers, button a shirt, pick up a coin, and write with both hands with no limitations other than the aforementioned decreased grip strength in the right hand.  *Id.*  Dr. Babilonia conducted Tinel and Phalen tests on both hands, which came out negative.  *Id.*  Additionally, Dr. Babilonia reported that Mercado's wrists, hands, and fingers showed normal movements.

Dr. Figueroa conducted an RFC assessment, which considered Dr. Davila's notes, clinical findings, and questionnaire, as well as Dr. Babilonia's evaluation.  Tr. 371.  Therein, Dr. Figueroa reported that there was evidence on the record to support an MDI regarding Mercao's right elbow fracture but that Mercado was able to perform all functions with a muscle strength of 4 out of 5 in the right side.  *Id.*  Dr. Figueroa noted that there was evidence of limitation of motion over the right elbow but no objective evidence to establish an MDI for that condition.  *Id.*  He further reported that Mercado could handle, finely manipulate (finger), and feel with no limitation with both hands. Tr. 375.  As to Mercado's reaching capacity, Dr. Figueroa reported that Mercado could reach in all other directions (including overhead) with both arms, concluding that Mercado suffered no manipulative limitations.  *Id.*.

A comparison of the treating physicians' and non-treating physicians' reports and findings reveals a conflict as to Mercado's reaching and handling capacity. In summary, Dr. Davila reported that Mercado is unable reach above his shoulder with the right arm and cannot finely manipulate, grasp, or push/pull with the right hand.  Dr. Lebron reported that Mercado could only reach overhead for ten minutes in an 8-hour workday with either arm or grasp/turn and finely manipulate with his hands for the same amount of time. On the other hand, Dr. Cintron reported that Mercado

had complete functional ability and that he was not disabled for lifting/carrying or handling objects.  Dr. Babilonia reported that Mercado had excellent gripping strength with his left hand and good gripping strength with his right hand;  and that Mercado was able to grip, grasp, pinch, finger trap, oppose his fingers, button a shirt, pick up a coin, and write with both hands with no limitations with normal movements as to his wrists, hands, and fingers.  Dr. Figueroa, reviewing the medical evidence consisting of Dr. Davila's clinical findings and notes, and Dr. Babilonia's evaluation, determined that Mercado could reach in all directions, handle (gross manipulation), finger (fine manipulation), and feel (skin receptors) without limitation with both arms.

Generally, controlling weight ought to be given to the treating physicians' opinions. However, if they are not well-supported and are inconsistent with the medical evidence on the record, the ALJ may accord greater to weight to non-treating sources.  *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2  As noted above, Dr. Davila's clinical signs, findings, and notes make no reference to an inability to reach above shoulder-level and instead report that Mercado was independent as to his functional activities; and his treatment orders do not support his finding that Mercado was unable to use his arm.  With regards to Dr. Lebron, as noted above, his clinical findings and notes on the record do not support his limitations report of Mercado's hands, fingers, and arms since there is no evidence on the record limiting Mercado's capacity to grasp/turn/twist, finely manipulate, and reach.  Since Dr. Davila's questionnaire and Dr. Lebron's limitations report were unsupported and inconsistent with their own medical evidence, I find that there was substantial evidence to support the ALJ's decision to accord them little or no weight in her RFC determination.  Conversely, I find that there was substantial evidence to support her decision to accord great weight to Dr. Cintron and Dr. Lebron's evaluations, and Dr. Figueroa's RFC assessment.

Importantly, "the resolution of conflicts in the evidence "is the purview of the ALJ, and "not for the doctors or for the courts," and I must uphold the ALJ's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Rodriguez v. Sec'y of Health and Human Servs*., 647 F.2d 218, 222 (1st Cir. 1981).  I

find that there is substantial evidence in the record to support the ALJ's RFC finding that Mercado could occasionally reach overhead with the upper right extremity, frequently reach with the upper right extremity, and was not limited as to handling with his right hand.  Since the RFC was supported by substantial evidence the hypothetical posed to the VE accurately reflected all of Mercado's limitations.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (hypothetical is proper if it reasonably incorporates all of the claimant's disabilities recognized by the ALJ).

### Explanation of Evidentiary Weight

Mercado next claims the ALJ's decision does not properly articulate the weight given each of the medical opinions.  Docket No. 16, at 15.  Specifically, Mercado argues that the ALJ did not give "good reasons" for either "disregarding" the treating sources' opinions or according them little weight, and did not explain her reasons for relying on the non-examining physician's opinion. *Id.*

20 C.F.R. § 404.1527(c)(2) requires that the ALJ's decision contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p. Additionally, when a treating source is not given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other pogrom physician, phycologist, or other medical specialist."  20 C.F.R. § 404.1527(d)(2)(ii). Further, the ALJ must always "give good reasons in [her] notice of determination or decision for the weight" given to the treating source's opinion.  20 C.F.R. § 404.1527(c)(2).

Here, the ALJ discussed the evidentiary weight granted to the treating physicians, the consultative examiners, and the consultative non-examiner in her written opinion.  She explained that she accorded "great weight to the clinical signs and findings reported by the DDS consultative examiners, Dr. Babilonia and Dr. Cintron, as they performed comprehensive evaluations of the claimant that are supported by objective tests."  Tr. 22.  Similarly, she accorded great weight to "the state agency medical consultant, Dr. Figueroa, as his evaluation [was] consistent with the

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                                    22

evidence and with the comprehensive evaluations performed by Dr. Cintron and Dr. Babilonia." *Id.*

Conversely, the ALJ explained that she granted little weight to the pain questionnaire filled out by Dr. Davila, treating physician, for being conclusory, unexplained, and containing unsupported limitations of function inconsistent with the medical evidence. *Id.* In making this determination the ALJ cited to the questionnaire and the documents attached to it. *Id.* As to the other treating physician, Dr. Lebron, she granted no weight to his limitation report filed after Dr. Figueroa's RFC assessment because it was not supported by his own treatment notes and objective findings or the rest of the medical evidence. *Id.* In according weight to Dr. Lebron, the ALJ specifically cited to Dr. Lebron's report and clinical findings which were dated after the RFC assessment conducted by Dr. Figueroa. Tr. 24. Further in her opinion, the ALJ contrasted Dr. Lebron's limitation report with Dr. Cintron, Dr. Babilonia, and Dr. Figueroa's opinions in her explanation of why she did not include the limitations in the hypothetical posed to the VE. Tr. 23.

An "ALJ's judgments on such matters should be given substantial deference, provided that [her] opinion clearly states specific reasons for reaching [her] conclusion." *Becker v. Sec'y of Health & Human Servs.*, 895 F.2d 34, 36 (1st Cir. 1990). I find that the ALJ gave "good reasons" for according little or no weight to the treating physician's opinions. I also find that the ALJ's explanations are sufficient under SSR 96-2 and 20 C.F.R. §404.1527(d)(2)(ii).

### Consideration of Daily Activities

Finally, Mercado argues that the ALJ "tried to diminish [Mercado's] pains, weaknesses, and limitations by mentioning that [Mercado] takes care of his personal needs." Tr. Docket No. 16, at 16. Mercado cites to *Hughes v. Astrue*, 705 F.3d 276, 278-79 (7th Cir. 2013), where the court criticized the ALJ for concluding that the plaintiff's ability to do laundry, ride public transport, and grocery shop meant she could work. However, while "a claimant's daily activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration

Mercado-Mari v. Commissioner of Social Security, Civil No. 14-1292 (BJM)                                    23

in assessing the credibility of a claimant's allegations."  *Hadley v. Colvin*, No. 2:14-CV-77-JHR, 2014 WL 7369501, at *5 (D. Me. Dec. 28, 2014).

Here, Mercado's daily activities were noted as one of many factors considered in determining the credibility of his symptoms and self-reported functional limitations.  The ALJ pointed to several corroborating parts of the record that indicated that Mercado's symptoms were not as detrimental to his ability to work as he claimed.  Thus, the ALJ did not improperly discredit the existence of Mercado's symptoms of pain, weakness, and limitation.  *See Valentin-Rodriguez v. Comm'r of Soc. Sec.*, No. 12-CV-1488 MEL, 2014 WL 2740410, at *9 (D.P.R. June 17, 2014) (finding that the ALJ did not discredit the existence of plaintiff's symptoms by noting the plaintiff's daily activities but rather adjusted the extent to which such symptoms affected her).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of June, 2015.

S/Bruce J. McGiverin
BRUCE J. McGIVERIN
United States Magistrate Judge